1  Leonard M. Shulman - Bar No. 126349
   Robert E. Huttenhoff – Bar No. 214447
2  **SHULMAN HODGES & BASTIAN LLP**
   26632 Towne Centre Drive, Suite 300
3  Foothill Ranch, California 92610-2808
   Telephone:      (949) 340-3400
4  Facsimile:      (949) 340-3000
   Email:          lshulman@shbllp.com
5                  rhuttenhoff@shbllp.com

6  Proposed Attorneys for Skylimit Apparel, Inc. dba Ice Vanilla,
   Debtor and Debtor in Possession
7

8              **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

10

11 In re                              Case No.  2:10-bk-49460 PC
                                      Chapter  11
12 **SKYLIMIT APPAREL, INC. dba
   ICE VANILLA,**                     **DEBTOR'S MOTION FOR ORDER:**

13 Debtor .
                                          **(1) APPROVING THE SALE OF REAL
14                                            PROPERTY OF THE ESTATE FREE AND
                                              CLEAR OF CERTAIN LIENS PURSUANT
15                                            TO BANKRUPTCY CODE SECTION
                                              363(b)(1) AND (f);**

16                                        **(2) AUTHORIZING THE EMPLOYMENT OF
                                              BROKER, ROBERT AN OF THE HEGER
17                                            COMPANY;**

18                                        **(3) APPROVING PAYMENT OF REAL
                                              ESTATE COMMISSION AND OTHER
19                                            COSTS OF SALE; AND**

                                          **(4) GRANTING OTHER RELATED RELIEF;**
20
                                      **MEMORANDUM OF POINTS AND
21                                    AUTHORITIES; DECLARATIONS OF STEVE YI
                                      AND ROBERT AN IN SUPPORT THEREOF**
22
                                      **[Property Located at:  2533-2535 East 28th Street, Vernon,
23                                    California 90058]**

24                                    **[MOTION FOR ORDER SHORTENING TIME FOR
                                      HEARING FILED CONCURRENTLY HEREWITH]**
25
                                      Date:         [TO BE SET]
26                                    Time:         [TO BE SET]
                                      Place:        Courtroom 1539
27                                                  255 East Temple Street
                                                    Los Angeles, CA  90012
28

1

**SHULMAN HODGES &
BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

# TABLE OF CONTENTS

|  | | | **Page** |
|---|---|---|---|
| I. | INTRODUCTION | | 6 |
| II. | SALE MOTION | | 7 |
| | A. | Background of Case | 7 |
| | B. | The Vernon Property | 8 |
| | D. | Liens and Encumbrances Related to the Vernon Property and Their Proposed Treatment Under the Sale | 9 |
| | E. | Disputed Liens | 12 |
| | C. | Request for Approval of the Employment of the Agent | 12 |
| | C. | The Proposed Sale of the Vernon Property | 13 |
| | F. | The Proposed Sale Serves the Best Interests of the Estate | 14 |
| III. | MEMORANDUM OF POINTS AND AUTHORITIES | | 15 |
| | A. | The Court May Approve a Sale of When There is a Good Faith Purchaser | 15 |
| | | 1. Sound Business Purpose | 15 |
| | | 2. The Sale Serves the Best Interests of the Estate and Creditors | 16 |
| | | 3. Accurate and Reasonable Notice | 17 |
| | | 4. The Sale is Made In Good Faith | 17 |
| | B. | Sale of the Property Free and Clear of Liens and Encumbrances Should be Permitted | 17 |
| | | 1. Section 363(f)(2) - Consent | 18 |
| | | 2. Section 363(f)(4) – Bona Fide Dispute | 18 |
| | C. | The Sales Do Not Contravene Policy | 20 |
| | D. | The Court has Authority to Waive the Fourteen Day Stay of Sale | 21 |
| IV. | THE COURT SHOULD AUTHORIZE THE DEBTOR TO EMPLOY THE BROKER | | 21 |
| | A. | The Broker Does Not Hold an Interest Adverse to the Estate | 21 |
| | B. | The Broker is Disinterested | 22 |
| V. | CONCLUSION | | 22 |

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

1    DECLARATION OF STEVE YI ................................................................................................ 24

2    DECLARATION OF ROBERT AN .......................................................................................... 29

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

### <u>CASES</u>

4

<u>In re Atwood,</u>
   124 B.R. 402 (Bankr. S.D. Ga. 1991) ............................................................. 19

5

<u>In re Beker Indus. Corp.,</u>
   63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986) ..................................................... 18

6

7

<u>In re Braniff Airways, Inc.,</u>
   700 F.2d 935 (5th Cir. 1983) ......................................................................... 20

8

<u>In re Brethren Care of South Bend, Inc.,</u>
   98 B.R. 927, 934 (Bankr. N.D. Ind. 1989) .................................................... 20

9

10

<u>In re Continental Air Lines, Inc.,</u>
   780 F.2d 1223 (5th Cir. 1986) ................................................................. 15, 16

11

<u>In re Crowthers McCall Pattner, Inc.,</u>
   114 B.R. 877, 885 (Bankr. S.D.N.Y. 1990) ................................................... 15

12

13

<u>In re Kliegl Bros. Universal Electric Stage Lighting Co., Inc.,</u>
   189 B.R. 874, 879-881 (Bankr. E.D.N.Y. 1995) ........................................... 21

14

<u>In re Lionel Corp.,</u>
   722 F.2d 1063 (2d Cir. 1983) .................................................................. 15, 16

15

16

<u>In re Milford Group, Inc.,</u>
   150 B.R. 904 (Bankr. M.D. Pa. 1992) ........................................................... 19

17

<u>In re National Liquidators, Inc.,</u>
   182 B.R. 186, 191 (S.D. Ohio 1995) ............................................................. 21

18

19

<u>In re Terrace Gardens Park Partnership,</u>
   96 B.R. 707 (Bankr. W.D. Tex. 1989) ........................................................... 18

20

<u>In re Walter,</u>
   83 B.R. 14 (Bankr. 9th Cir. 1988) .......................................................... 15, 16

21

22

<u>In re WHET, Inc.,</u>
   12 B.R. 743, 750 (Bankr. D. Mass. 1981) ..................................................... 20

23

<u>In re Wilde Horse Enterprises, Inc.,</u>
   136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ............................................. 15, 17

24

25

### <u>STATUTES</u>

26

Bankruptcy Code Section 101(14) ....................................................................... 22

27

Bankruptcy Code Section 327 ............................................................................. 22

28

**SHULMAN HODGES &
BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

Bankruptcy Code Section 363(b).................................................................................... 15

Bankruptcy Code Section 363(f) ........................................................................ 17, 18, 20

Bankruptcy Code Section 363(m)................................................................................... 17

Bankruptcy Code Section 506(c) ................................................................................... 21

Federal Rule of Bankruptcy Procedure 6004(h) ............................................................ 21

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

1  **TO THE HONORABLE PETER H. CARROLL, UNITED STATES BANKRUPTCY**

2  **JUDGE AND ALL INTERESTED PARTIES:**

3       Skylimit Apparel, Inc. dba Ice Vanilla ("Debtor"), the debtor and debtor in possession

4  herein, hereby brings this Motion for Order:  (1) Approving the Sale of Real Property of the

5  Estate Free and Clear of Certain Liens Pursuant to Bankruptcy Code Section 363(b)(1) and (f),

6  (2) Authorizing the Employment of Broker, Robert An of The Heger Company; (3) Approving

7  Payment of Real Estate Commission and Other Costs of Sale; and (4) Granting Other Related

8  Relief ("Sale Motion").

9       In support thereof, the Debtor respectfully represents as follows:

10                          **I.        INTRODUCTION**

11       As set forth in more detail below, Debtor seeks Court approval to sell the Vernon

12  Property[1] to the Buyer for a purchase price of $2,150,000.  Subject to lender approval, the

13  Vernon Property will be sold free and clear of all Liens and Encumbrances.  The Vernon

14  Property has been listed for sale through an experienced broker since February 2, 2010.  Since

15  that time there have been three (3) offers to purchase the Vernon Property; however, two (2) of

16  the purchase offers have been rescinded.  The instant offer was accepted prior to the Petition

17  Date and escrow was opened in approximately July of 2010.  The bankruptcy filing was

18  necessary to resolve certain disputed liens that were filed by judgment creditors during the ninety

19  (90) day preference period.  The current offer is sufficient to pay taxes, costs of sale and the

20  majority of the consensual liens.  The undisputed lien holders have consented to the sale – in

21  accordance with an agreement reached between the lenders and the third party guarantor.  The

22  proposed sale is not subject to over-bids – as the Vernon Property has been marketed for a

23  considerable amount of time and the Debtor is concerned that the Buyer would not consent to

24  such material modification of the purchase offer and the sale would be lost.  Moreover, the third

25  party guarantor shall be required to deposit additional funds into escrow to cover the shortfall

26  (estimated at $128,630).  Under the circumstances, the Debtor believes that it is appropriate for

27  the Court to approve the sale with no over-bid procedures.

28

---

[1]      Capitalized terms are defined below.

**SHULMAN HODGES &
BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

1   **The Debtor has filed a separate motion requesting that the hearing on the Sale**
2   **Motion be conducted on shortened time basis in order to preserve the existing purchase**
3   **offer (which has been pending since May 5, 2010) and to limit the accrual of interest, fees**
4   **and other costs which are estimated at $250 per day.**

5   The Debtor believes the only option available is the orderly sale of the Vernon Property
6   and based on good business reasons, including the current real estate market and the economics
7   of the Debtor's situation, it is in the best interest of the creditors of this Estate that this Sale
8   Motion be approved so that Debtor does not lose this favorable business opportunity.

9                           **II.    SALE MOTION**

10  **A.    Background of Case**

11  Because of involuntary liens recorded by creditors against the Vernon Property frustrated
12  the Debtor's efforts to close a sale on the Vernon Property, the Debtor filed a petition under
13  Chapter 11 of the Bankruptcy Code on September 16, 2010 ("Petition Date") and has continued
14  in the possession of its property and the management of its affairs.

15  The Debtor is a California corporation incorporated in December 2003 and engaged in
16  manufacturing women's wear and garment.  The Debtor maintained two facilities: one at 1230
17  South San Pedro Street, Los Angeles, California ("San Pedro Property") as a showroom
18  (wholesale) and 2533-2535 E. 28th Street, Vernon, California ("Vernon Property") as a
19  warehouse and factory.

20  The Vernon Property was used for design, pattern and cutting of the garment. The
21  finishing process, including sewing of the garment, was done by third party subcontractors.  The
22  Debtor's primary customers included Wet Seal, Rainbow, YM Inc, Suzy, United Fashion,
23  Siblings, Discovery, 10 Spot, Charlotte Russe, Marine, Number 7 and Amoine.

24  The Debtor's sales volume steadily grew every year until 2007.  Beginning in 2008, the
25  Debtor started losing its sales volume and began having difficulties with meeting its obligations
26  to its creditors.  In 2009, the sales volume fell by 50% and the losses were close to $1 million.
27  The losses and decline of the sales volume continued into 2010 and certain creditors filed
28  lawsuits for collection of accounts receivable.

**SHULMAN HODGES &**
**BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

1    The Debtor was unable to find other vendors who would extend the credit for supply of

2    textiles and other supplies.  In April 2010, the Debtor surrendered the San Pedro Property back to

3    the landlord and in July 2010, decided to cease its operations completely.

4    **B.    The Vernon Property**

5    The Debtor's primary asset is the Vernon Property which is legally described as follows[2]:

6
7
8    > LOTS 17, 18, 19, 20, 21, 22 AND THE EASTERLY 22 FEET OF
> LOT 23 IN BLOCK C, DAY STAR TRACT, IN THE CITY OF
> VERNON, COUNTY OF LOS ANGELES, STATE OF
9    > CALIFORNIA, AS PER MAP RECORDED IN BOOK 25 PAGE
> 66 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF
10   > THE COUNTY RECORDER OF SAID COUNTY.  EXCEPTING
> THEREFROM THE OIL, GAS AND OTHER MINERALS IN
> AND UNDER SAID PROPERTY TOGETHER WITH THE
11   > EXCLUSIVE RIGHT TO USE SUCH PORTION OF SAID
> PROPERTY LYING MORE THAN 500 FEET BELOW THE
12   > SURFACE FOR THE EXTRACTION OF OIL, GAS AND
> MINERALS FROM SAID PROPERTY OR PROPERTY IN THE
13   > VICINITY THEREOF BUT WITHOUT THE RIGHT OF
> SURFACE ENTRY, AS RESERVED IN DEED FROM
14   > GENERAL PETROLEUM CORPORATION, A CORPORATION
> OF DELAWARE, RECORDED DECEMBER 1, 1959.
15

16   > APN: 6302-003-025

17   The Vernon Property was valued in the Debtor's Bankruptcy Schedule A at $2,150,000.

18   The Vernon Property is encumbered by a first deed of trust in favor of Nara Bank in the

19   approximate amount of $1,217,557, a second deed of trust in favor of The Mortgage Capital

20   Development Corp. ("TMC") in the approximate amount of $952,224 and disputed liens totaling

21   $742,440.  At the time of the Petition Date, the Debtor was three (3) months in arrears to Nara

22   Bank and TMC.

23   The Debtor currently leases a portion of the Vernon Property to Jin's Cutting pursuant to

24   a commercial lease agreement that will expire on October 1, 2010.  The Debtor was instructed to

25   apply the security deposit to the lease payment due for the month of August 2010.  The Debtor is

26   informed that Jin's Cutting will vacate the Vernon Property upon consummation of the sale.

27

28   ---

[2]    The legal description is believed to be accurate but may be corrected or updated by the title company in the
transfer documents as necessary to complete the sale of the Vernon Property.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

The Vernon Property has been listed for sale through an experienced broker since February 2, 2010. Since that time there have been three (3) offers to purchase the Vernon Property; however, two (2) of the purchase offers have been rescinded. Prior to the Petition Date, the Debtor negotiated a transaction to sell the Vernon Property and escrow was opened. However, the sale was frustrated by involuntary judgment liens that were recorded against the Vernon Property during the ninety (90) day preference period. As a result, the Debtor sought protection under the Bankruptcy Code in order to resolve the disputed liens that were filed by the judgment creditors.

**D.    Liens and Encumbrances Related to the Vernon Property and Their Proposed Treatment Under the Sale**

The following chart reflects the Liens and Encumbrances[3] against the Vernon Property as set forth in the Debtor's Bankruptcy Schedule D and their proposed treatment under the proposed sale:

| Creditor | Description | Scheduled Amount | Treatment Through the Sale |
|---|---|---|---|
| Los Angeles County Treasurer and Collector | Real property taxes for fiscal year 2010 – 2011 – amount owing through September 30, 2010. | $17,146.28 | All outstanding real property taxes will be paid through escrow on the sale transaction. |

---

[3]    "Liens and Encumbrances" means any and all liens, claims and encumbrances of any nature whatsoever.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

| Creditor | Description | Scheduled Amount | Treatment Through the Sale |
|---|---|---|---|
| Nara Bank | First deed of trust recorded June 1, 2007, Instrument No. 2007-1326158<br><br>Deed of Trust recorded June 1, 2007, Instrument No. 2007-1326159 | $1,217,556.52 | The Debtor is informed that Nara Bank will accept $1,181,892.70 (as of July 26, 2010) as payment in full on account of the obligation owed by the Debtor.<br><br>The Debtor is informed that Nara Bank has agreed to waive a pre-payment penalty, any and all late charges and interest charges and its entitlement to assert a default interest rate. In the event that this is inaccurate, the Debtor reserves the right to object to certain fees and costs and withhold payment for that portion pending further Court order.<br><br>This claim will be paid through escrow on the sale transaction. Thus, the Vernon Property shall be sold free and clear of the lien. |
| The Mortgage Capital Development Corp. | Second deed of trust recorded June 1, 2007, Instrument No. 2007-1326163<br><br>Assignment to Small Business Administration recorded June 1, 2007, Instrument No. 2007-1326164 | $952,223.86 | The Debtor is informed that TMC will accept $952,223.86 (as of July 26, 2010) plus accrual of interest through close of escrow as payment in full on account of the obligation owed by the Debtor.<br><br>This claim will be paid through escrow on the sale transaction. In addition to the sale proceeds, the Debtor's principal and third party guarantor, Steven Yi, shall deposit approximately $128,630 in escrow to cover any deficiency owed to TMC. Thus, the Vernon Property shall be sold free and clear of the lien. |

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc

4239-000\EXP. 56

| Creditor | Description | Scheduled Amount | Treatment Through the Sale |
|---|---|---|---|
| Voom Trim, Inc. | Writ of attachment recorded July 26, 2010, Instrument No. 2010-1019324 **(Recorded within 90 days prior to the Petition Date)** | $50,000.00 | The priority, validity and amount of this lien is disputed by the Debtor. The lien is the result of a writ of attachment which was recorded during the 90 days prior to the Petition Date. As it is subject to a bona fide dispute, the Debtor seeks to sell the Vernon Property free and clear of the lien in favor of Voom Trim, Inc., with such disputed lien to attach to the proceeds of the sale, if any, in the same validity and priority as prior to the sale pending agreement with the creditor or further Court order. |
| ATEX Corporation | Abstract of Judgment recorded August 9, 2010, Instrument No. 2010-1100197 **(Recorded within 90 days prior to the Petition Date)** | $692,440 | The priority, validity and amount of this lien is disputed by the Debtor. The lien is the result of an abstract of judgment that was recorded during the 90 days prior to the Petition Date. As it is subject to a bona fide dispute, the Debtor seeks to sell the Vernon Property free and clear of the lien in favor of ATEX Corporation, with such disputed lien to attach to the proceeds of the sale, if any, in the same validity and priority as prior to the sale pending agreement with the creditor or further Court order. |

In summary, the Debtor seeks to sell the Vernon Property subject to approval of Nara Bank and TMC whereby the Vernon Property will be sold free and clear of all liens and encumbrances, with the disputed liens to attach to the proceeds of the sale, if any, in the same validity and priority as prior to the sale pending agreement with the creditor or further Court order. The Debtor believes that Nara Bank and TMC will agree to accept less than the total amount due on the loans against the Vernon Property, based on pre-existing agreements between the lenders and Steve Yi, as a third party guarantor.

As a condition to the closing of the sale, Steve Yi, the Debtor's secretary and sixty percent (60%) shareholder, has agreed to deposit into escrow approximately $128,630 of his

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

1    personal funds to cover any deficiency owed to TMC to allow the sale transaction to close.  Mr.

2    Yi has agreed to not look to the Debtor for the repayment of any funds advanced.

3    **E.**    **Disputed Liens**

4          As set forth in the chart above, the liens recorded by Voom Trim, Inc. and ATEX

5    Corporation are disputed (collectively referred to herein as "Disputed Liens").    The Disputed

6    Liens were recorded within ninety (90) days of the Petition Date and, therefore, under applicable

7    federal bankruptcy law, are subject to avoidance.  If necessary, the Debtor intends to file an

8    avoidance action against the holder of a Disputed Lien to appropriately subordinate their claims

9    to that of general unsecured creditors.

10          In summary, the Disputed Liens are the subject of a bona fide dispute and it is

11    appropriate for the Court to allow the sale to proceed.

12    **C.**    **Request for Approval of the Employment of the Agent**

13          In or around February 2010, the Debtor engaged Robert An of The Heger Company

14    ("Broker") to market and sell the Vernon Property.  By this Motion, the Debtor seeks to employ

15    the Broker on behalf of the estate to complete the sale of the Vernon Property.  The Broker is

16    familiar with the Vernon Property, the surrounding area and comparable properties, as well as

17    the sale contemplated by this Motion (as discussed herein below).

18          Contingent upon Court approval, the Debtor proposes to continue with the employment

19    of the Broker on the terms and conditions set forth in the Listing Agreement dated February 2,

20    2010, a true and correct copy of which is attached to the Declaration of Robert An ("An

21    Declaration") as **Exhibit "1"** and incorporated herein by this reference.

22          The Broker has not received, and will not receive, a pre-petition or post-petition retainer.

23    The Broker does not have any connection with the Debtor, the Debtor's attorneys or accountants,

24    the Debtor's creditors, or any other outside party in interest, or their respective attorneys or

25    accountants.   The Broker's compensation upon close of escrow for the sale of the Vernon

26    Property is set forth in the chart below.

27          The Broker has been informed and understands that no sale of the Vernon Property may

28    be consummated until after notice and hearing.  As set forth in the An Declaration, the Broker is

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

also aware of the provisions of Bankruptcy Code Section 328(a) and understands that, notwithstanding the terms and condition of employment herein set forth, the Court may allow compensation different from the compensation provided in the Listing Agreement if such terms and conditions prove to have been improvident in light of developments unanticipated at the time of fixing of such terms and conditions.

## C.    The Proposed Sale of the Vernon Property

Pursuant to Bankruptcy Code Sections 363(b)(1) and (f); the Debtor intends to sell the Vernon Property, free and clear of all Liens and Encumbrances, with Liens and Encumbrances not resolved through the sale, to attach to the proceeds of the sale in the same validity and priority as prior to the Petition Date.

The Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate ("Purchase Agreement"), a true and correct copy of which is attached to the Declaration of Steve Yi as **Exhibit "2"** and incorporated herein by this reference. In brief, the principal terms of the sale of the Vernon Property is as follows[4]:

| | |
|---|---|
| Buyer: | Green Globe International, LLC |
| Purchase Price: | $2,150,000<br>($35,000 deposit, balance of $395,000 cash and $1,720,000 due at closing) |
| Escrow Holder: | Duane Butler, Escrow Officer<br>Commerce Escrow Company |
| Title Company: | Debi Korman, Title Officer<br>North American Title Company |
| Outstanding<br>Real Property Taxes: | To be paid by Seller through escrow |
| Closing Date: | Thirty (30) Days after acceptance, subject to Court approval |
| Allocation of Costs:<br>(Other Customary Costs) | Other normal costs of sale as is customary in the state of California shall be paid by Buyer and Seller. |

---

[4] This summary of the material terms is not meant to be a complete review of every provision of the Purchase Agreement. In the event of any inconsistency between the terms of the Purchase Agreement and this summary, the terms of Purchase Agreement shall control and not this summary.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

| | |
|---|---|
| Real Estate Commission: | Through this Sale Motion, the Debtor seeks authorization to pay a real estate broker commission to Seller's agent, Robert An of The Heger Company and a selling commission to the Buyer's real estate agent, Mike Kantor of Gateway Business Properties as follows:<br><br>Robert An of The Heger Company          $33,000<br>Mike Kantor of Gateway Business Properties    $43,000<br>_____<br>Total Commission                             $76,000 |
| No Warranties; As Is Condition | The Vernon Property will be sold on an "as is – where as" basis with all faults and conditions then existing at property, and the Buyer shall agree that (1) the Seller is not making any representations, warranties, either express or implied, as to the condition, use (prior, present and future), or otherwise of the Vernon Property; and (2) the Seller shall not provide the Buyer with any reports as to the conditions or uses for the Vernon Property. |
| Bankruptcy Court Jurisdiction | Prior to and after the closing of escrow, the United States Bankruptcy Court shall have and retain the sole and exclusive jurisdiction over the Vernon Property and the Agreement; and all disputes arising before and after closing shall be resolved in said Court. |
| Unknown Contingencies | If the Seller is unable to complete escrow because of unknown defects in title, or because the liens and encumbrances exceed the amounts known to the Seller, or by being divested of title by the Bankruptcy Court, or because the income tax consequences of the sale are excessive, the Buyer's sole damages will be limited to the refund of its deposit less escrow. |

## F.    The Proposed Sale Serves the Best Interests of the Estate

The Debtor has made a business decision that it is in the best interest of the creditors of this Estate that this Sale Motion be approved.  The Debtor is in default to Nara Bank and TMC and has no working capital to continue its operations.   Further, due to the amount of Liens and Encumbrances and operating costs, the Debtor does not believe that its business can be reorganized.  Thus, the Debtor determined that the best way to create and maximize a recovery for creditors is to sell the Vernon Property.  If the Sale Motion is not approved, the  Debtor may be unable to find another buyer for the Vernon Property and will likely lose the Vernon Property through a foreclosure sale by Nara Bank or TMC.  However, through this Sale Motion, the Debtor will create a benefit for creditors.

As set forth in the An Declaration, the offer presented represents a fair market value for the Vernon Property in today's real estate market.  The Vernon Property has been listed for sale since February 2, 2010.  Since that time there have been three (3) offers to purchase the Vernon Property; however, two of which have been rescinded.  In addition, the Property Profile and

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

1  Sales Comparables obtained in August 2010 for commercial properties in the same area where

2  the Vernon Property is located, reflects purchase prices ranging from $750,000 to $4,970,000.

3  However, the commercial building with the most similarity in square footage to the Vernon

4  Property was sold in November 2009 for a purchase price of $1,322,000.  As such, given the

5  present state of the real estate market in Southern California, the sale of the Vernon Property will

6  be for a purchase price that is fair and reasonable.

7        Thus, good causes exists to grant the Sale Motion so that the Debtor does not lose this

8  favorable business opportunity.

9              **III.    MEMORANDUM OF POINTS AND AUTHORITIES**

10  **A.    The Court May Approve a Sale of When There is a Good Faith Purchaser**

11        The Debtor, after notice and hearing, may sell property of the Estate.  Bankruptcy Code

12  Section 363(b).  The standards to establish are that there is a sound business purpose for the sale,

13  that the sale is in the best interests of the estate, i.e., the sale is for a fair and reasonable price,

14  that there is accurate and reasonable notice to creditors and that the sale is made in good faith.  In

15  re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal 1991); In re Lionel Corp.,

16  722 F.2d 1063, 1069 (2d Cir. 1983).  Business justification would include the need to close a sale

17  to one of very few serious bidders where an asset has been extensively shopped and a delay

18  could jeopardize the transaction.  See, e.g., In re Crowthers McCall Pattner, Inc., 114 B.R. 877,

19  885 (Bankr. S.D.N.Y. 1990) (extreme difficulty finding a buyer justified merger when buyer

20  found).   The Debtor's proposed sale of the Vernon Property meets the foregoing criteria.

21        1.    Sound Business Purpose

22        The Ninth Circuit in In re Walter, 83 B.R. 14 (Bankr. 9th Cir. 1988) has adopted a

23  flexible, case by case test to determine whether the business purpose for a proposed sale justifies

24  disposition of property of the estate under Section 363(b).  In Walter, the Ninth Circuit, adopting

25  the reasoning of the Fifth Circuit in In re Continental Air Lines, Inc., 780 F.2d 1223 (5th Cir.

26  1986), and the Second Circuit in In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983), set forth the

27  following standard to be applied under Bankruptcy Code Section 363(b).

28  ///

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

> Whether the proffered business justification is sufficient depends on the case.  As the Second Circuit held in Lionel, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.  He might, for example, look to such relevant factors as the proportionate value of the assets to the estate as a whole, the amount of lapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasingly or decreasing in value.  This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

Walter, supra, at 19-20 [quoting In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986)].

Here, the facts surrounding the sale support the Debtor's business decision that the proposed sale is in the best interest of the Estate and its creditors.  As set forth above, the amount owed on the Vernon Property exceeds its estimated fair market value.  The Debtor has determined that the best way to create and maximize a recovery for creditors is to sell the Vernon Property as it is not necessary for its reorganization.  The sale of the Vernon Property will assist the Debtor in reducing monthly operating expenses.  If the Court does not approve the sale, the Debtor may lose the opportunity to sell the Vernon Property and cause the Estate to incur additional expenses associated with finding a new buyer if one could be found in the present real estate market.

If the sale is not approved, the Debtor may run the chance of losing the Vernon Property to a foreclosure sale by secured creditors, Nara Bank and/or TMC.

Therefore, the Debtor respectfully submits that if this Court applies the good business reason standard suggested by the Second Circuit in Lionel, the sale should be approved.

2.    The Sale Serves the Best Interests of the Estate and Creditors

The benefits to the Estate, as set forth above, are tremendous.  If the sale is not approved, the Debtor will incur costs with trying to find a new buyer, or will lose Vernon Property through a foreclosure sale.  Furthermore, the Debtor has determined that the best way to create and

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

1    maximize a recovery for creditors is to sell the  Vernon Property as it is not necessary for his

2    reorganization and the sale will reduce monthly costs.  Thus, the Debtor has made a business

3    decision that it is in the best interest of the creditors of this Estate that this Sale Motion be

4    approved.

5        3.    Accurate and Reasonable Notice

6        The Debtor intends to serve notice of the proposed sale on all creditors and interested

7    parties.  As such, it is expected that notice of this Sale Motion will satisfy the requirements for

8    accurate and reasonable notice and will be appropriate under the circumstances.

9        4.    The Sale is Made In Good Faith

10        The proposed sales have been brought in good faith and have been negotiated on an

11    "arms length" basis.

12        The court, in Wilde Horse Enterprises, set forth the factors in considering whether a

13    transaction is in good faith.  The  court stated:

14            'Good faith' encompasses fair value, and further speaks to the
            integrity of the transaction.  Typical 'bad faith' or misconduct,
15            would include collusion between the seller and buyer, or any
            attempt to take unfair advantage of other potential purchasers. . . .
16            And, with respect to making such determinations, the court and
            creditors must be provided with sufficient information to allow
17            them to take a position on the proposed sale.  (citations omitted)

18    Id. at 842.

19        In the present case, the negotiation of the proposed sale was an arms-length transaction.

20    The Vernon Property has been exposed to the open market for a considerable period of time and

21    the offer presented by the Buyer represents the best offer received by the Debtor.  Accordingly,

22    the sale is in good faith and should be approved.  The Debtor requests such a finding pursuant to

23    Bankruptcy Code Section 363(m).

24    **B.    Sale of the Property Free and Clear of Liens and Encumbrances Should be**

25        **Permitted**

26        Bankruptcy Code Section 363(f) allows a Chapter 11 debtor to sell property of the

27    bankruptcy estate "free and clear of any interest in such property of an entity," if any one of the

28    following five conditions is met:

17

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

(1)    applicable non-bankruptcy law permits a sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

Bankruptcy Code Section 363(f).

Section 363(f) is written in the disjunctive and thus only one of the enumerated conditions needs to be satisfied for Court approval to be appropriate.

### 1.    Section 363(f)(2) - Consent

The sale of Vernon Property is proper pursuant to Section 363(f)(2). The Debtor believes that secured creditors Nara Bank and TMC will have no objection to the sale under the terms set forth herein.  The Debtor desires to take advantage of a favorable purchase offer to effectuate the sales of Vernon Property and reduce monthly costs.

Subject to lender approval, the Vernon Property will be sold free and clear of all Liens and Encumbrances wherein Nara Bank and TMC agrees to accept less than the total amount due on the loans against the Vernon Property.  The Debtor does not anticipate that Nara Bank and TMC will object to the Sale Motion.

Courts have approved sales under Bankruptcy Code Section 363(f) even where the sale price did not exceed the value of the liens asserted on the property so long as the sale is for fair market value.   In re Terrace Gardens Park Partnership, 96 B.R. 707 (Bankr. W.D. Tex. 1989); In re Beker Indus. Corp., 63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986).

Thus, approval for the sale of the Vernon Property free and clear of Liens and Encumbrances in the manner provided herein is appropriate.

### 2.    Section 363(f)(4) – Bona Fide Dispute

The Debtor believes that the sale of the Vernon Property is proper under Section 363(f)(4) because bona fide disputes exists with regards to the Disputed Liens.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

1    In light of the disputes regarding the validity, priority and amount of the Disputed Liens,

2    the Debtor seeks to sell the Vernon Property free and clear of such liens, with such disputed liens

3    to attach to the proceeds of sale pending further agreement with creditor(s) or further Court

4    order.  Any claim that holders of the Disputed Liens may have against the Estate related to the

5    Vernon Property are the subject of bona fide disputes and therefore the sale may go forward free

6    and clear of such claims pursuant to Section 363(f)(4).  A bona fide dispute has been defined by

7    In re Atwood, 124 B.R. 402 (Bankr. S.D. Ga. 1991) as a "genuine issue of material fact that

8    bears upon the debtor's liability, or meritorious contention as to the application of law to

9    undisputed facts."  Id. at 407.  In In re Milford Group, Inc., 150 B.R. 904 (Bankr. M.D. Pa.

10    1992), the court stated it need not resolve a bona fide dispute, but must determine whether the

11    issues presented are genuine as to the existence of a bona fide dispute.  In doing so, the Milford

12    Court found that the debtor had met its burden to establish cause for the Court to allow for the

13    sale of the property, free and clear of liens.

14    In the instant case, the proposed sale of the Vernon Property conforms with the

15    requirements of Section 363(f)(4) as the Debtor has established the existence of bona fide

16    disputes with the holders of the Disputed Liens.

17    The Debtor does not believe it is prudent or necessary to resolve the disputes with holders

18    of the Disputed Liens by Court order or judgment prior to the sale.  The alleged Disputed Liens

19    are each subject to a bona fide dispute and the Bankruptcy Code provides for a means to sell free

20    and clear of such interests.  If the Estate is forced to wait for resolution of the multiple disputes,

21    the Debtor may lose the opportunity to capitalize on the current interest from the Buyer and may

22    also lose the subject property through a foreclosure.  As such, the sale should proceed now, with

23    any claims or interests of Disputed Liens to attach to the proceeds, if any.

24    The policy behind allowing property to be sold free and clear of disputed interests

25    provides that the disputes do not bog down the swift and orderly liquidation of assets for the

26    highest possible value.  In this case, more than any other, where the asset is real estate that is

27    subject to fluctuations in the market, interest rates and other factors that impact its value, it is

28    absolutely essential for the Debtor to be able to quickly liquidate the Estate's interest in the

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

19

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

1  Vernon Property for its maximum possible value.  By demonstrating the existence of the bona

2  fide disputes, section 363(f) allows the Vernon Property to be sold free and clear of any lien that

3  is subject to a dispute so that at a minimum, proceeds can be generated for distribution to parties.

4  If every sale were subject to resolution of disputes that were in existence, expense and time

5  associated with litigation would significantly impact values that could be obtained by Debtors

6  and/or other estate fiduciaries for the benefit of creditors.  Resolution of the issues with regard to

7  the claims of the holders of the Disputed Liens may likely take substantial time, effort and

8  expense by the parties.  That process should not hinder, delay or in any way inhibit the Debtor's

9  efforts to maximize the value of the sale of Vernon Property.

10      Thus, approval for the sale of the Vernon Property free and clear of Liens and

11  Encumbrances pursuant to Bankruptcy Code Section 363(f)(4) in the manner provided herein is

12  appropriate.

13  **C.    The Sales Do Not Contravene Policy**

14      As early as 1981, a court held that:

15          As to whether the sale by a trustee of all of the debtor's assets must
            take place in the context of a confirmed reorganization plan, the
16          case law again is clear that there is nothing objectionable about a
            sale of all the assets outside of a Chapter 11 plan.
17

18  In re WHET, Inc., 12 B.R. 743, 750 (Bankr. D. Mass. 1981).

19      Not to the contrary, the Fifth Circuit decision in In re Braniff Airways, Inc., 700 F.2d 935

20  (5th Cir. 1983), disapproved an asset sale because the transaction at issue involved much more

21  than a sale of property in that the documents significantly limited the debtor's reorganization

22  options.  Id. At 939.

23      The Debtor believes the only option available is the orderly sale of the Vernon Property.

24  In essence, based on good business reasons, including the current real estate market and the

25  economics of the Debtor's situation, it is in the best interest of the creditors of this Estate that

26  this Sale Motion be approved.

27      Accordingly, the sale does not conflict with underlying bankruptcy policy.  See, In re

28  Brethren Care of South Bend, Inc., 98 B.R. 927, 934 (Bankr. N.D. Ind. 1989) (certainty of future

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

20

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

1  for tenants was good business reason and only feasible plan was liquidation, so 363 sale

2  approved despite pending plan of reorganization).

3  **D.    The Court has Authority to Waive the Fourteen Day Stay of Sale**

4        Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing the

5  use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days

6  after entry of the order, unless the court orders otherwise."

7        The Debtor desires to close the sale on the Vernon Property as soon as practicable after

8  entry of an order approving the sale.  Accordingly, the Debtor requests that the Court in the

9  discretion provided it under Federal Rule of Bankruptcy Procedure 6004(h), waive the fourteen

10  day stay of the order granting this Sale Motion and approving the sale to the Buyer.

11  **IV.    THE COURT SHOULD AUTHORIZE THE DEBTOR TO EMPLOY THE**

12  **BROKER**

13        As set forth above, the Debtor requests that it be authorized to employ the Broker on the

14  terms and conditions set forth herein.  The Broker was engaged pre-petition by the Debtor to

15  market and sell the Vernon Property, but otherwise has no connection or relationship with the

16  Debtor.

17  **A.    The Broker Does Not Hold an Interest Adverse to the Estate**

18        An interest is "adverse" if it (i) is an economic interest that would tend to lessen the value

19  of the bankruptcy estate; or (ii) would create either an actual or potential dispute in which the

20  estate is a rival claimant.  See, In re National Liquidators, Inc., 182 B.R. 186, 191 (S.D. Ohio

21  1995); see, also, In re Kliegl Bros. Universal Electric Stage Lighting Co., Inc., 189 B.R. 874,

22  879-881 (Bankr. E.D.N.Y. 1995).

23        In the present case, as set forth in the An Declaration, neither the Broker nor any of its

24  professionals, hold or represent any interest that would lessen the value of the bankruptcy estate.

25  Moreover, representation of the estate and/or the Debtor by the Broker will not create a conflict.

26  Accordingly, the Broker does not hold or represent any adverse interest in connection with this

27  case.

28  ///

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

**B.     The Broker is Disinterested**

As set forth in the An Declaration, the Broker is a "disinterested person" within the meaning of Bankruptcy Code Section 101(14) in that the Broker:

(a)     is not a creditor, an equity security holder, or an insider of the Debtor;

(b)     is not and was not, within two (2) years before the date of the filing of the petition, a director, officer or employee of the Debtor; and

(c)     does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, interest in, the Debtor or for any other reason.

In sum, the Broker meets the requirements for employment under the Bankruptcy Code and the Court should authorize the proposed employment under Bankruptcy Code Section 327.

## V.     CONCLUSION

Based upon the foregoing, the Debtor respectfully submits that good cause exists for granting the Sale Motion and the Debtor respectfully requests that the Court enter an order as follows:

1.     Approving the Purchase Agreement attached as **Exhibit "2"** to the Yi Declaration and authorizing the Debtor to sell the Vernon Property to the Buyer, subject to approval by Nara Bank and TMC, free and clear of all liens, claims and encumbrances pursuant to Bankruptcy Code Sections 363(b), (f) and (m);

2.     Authorizing the Debtor to employ the Broker on the terms and conditions set forth herein;

3.     Authorizing the payment of the real estate commission and other costs of sale through escrow for the Vernon Property as provided in the Purchase Agreement

4.     Finding that the sale of the Vernon Property was conducted in good faith within the meaning of Bankruptcy Code Section 363(m), and that the Debtor and the Buyer of the Vernon Property are entitled to the benefits and protections of this subsection of the Bankruptcy Code;

///

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

1       5.     Waiving the fourteen day stay of the order approving the sale of the Vernon

2  Property under Federal Rule of Bankruptcy Procedure 6004(h);

3       6.     Authorizing the Debtor to sign any and all documents necessary and to undertake

4  any non-material amendments and modifications necessary to complete the sale of the Vernon

5  Property to the Buyer without further notice, hearing or order of this Court; and

6       7.     For such other and further relief as the Court deems just and proper under the

7  circumstances of this case.

Respectfully submitted,

**SHULMAN HODGES & BASTIAN LLP**

*/s/ Robert E. Huttenhoff*

Dated:  September 22, 2010    By: _____

Leonard M. Shulman
Robert E. Huttenhoff
Proposed Attorneys for Skylimit Apparel, Inc.
dba Ice Vanilla, Debtor and Debtor in Possession

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

## DECLARATION OF STEVE YI

I, Steve Yi, declare:

1.      I am the Secretary of Skylimit Apparel, Inc. dba Ice Vanilla ("Debtor"), the debtor and debtor in possession herein.  I have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify thereto.  I am also personally familiar with, and am custodian of, the records of the Debtor as they pertain to the financial records set forth herein.  The records of the Debtor are made by agents of the Debtor who report to me and who have a business duty to enter the records of the Debtor accurately and at or near the time of the event which they record.

2.      I make this Declaration in support of the Debtor's Motion for Order: (1) Approving the Sale of Real Property of the Estate Free and Clear of Certain Liens Pursuant to Bankruptcy Code Section 363(b)(1) and (f); (2) Authorizing the Employment of Broker, Robert An of The Heger Company; (3) Approving Payment of Real Estate Commission and Other Costs of Sale; and (4) Granting Other Related Relief ("Sale Motion").

3.      The Debtor is a California corporation incorporated in December 2003 and engaged in manufacturing women's wear and garment.  The Debtor maintained two facilities: one at 1230 South San Pedro Street, Los Angeles, California ("San Pedro Property") as a showroom (wholesale) and 2533-2535 E. 28th Street, Vernon, California ("Vernon Property") as a warehouse and factory.

4.      The Vernon Property is owned by the Debtor and was used for design, pattern and cutting of the garment. The finishing process, including sewing of the garment, was done by third party subcontractors.  The Debtor's primary customers included Wet Seal, Rainbow, YM Inc, Suzy, United Fashion, Siblings, Discovery, 10 Spot, Charlotte Russe, Marine, Number 7 and Amoine.

5.      The Debtor's sales volume steadily grew every year until 2007.  Beginning in 2008, the Debtor started losing its sales volume and began having difficulties with meeting its obligations to its creditors.  In 2009, the sales volume fell by 50% and the losses were close to $1 million.  The losses and decline of the sales volume continued into 2010 and certain creditors

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

1  filed lawsuits for collection of accounts receivable.  The Debtor was unable to find other vendors

2  who would extend the credit for supply of textiles and other supplies.  In April 2010, the Debtor

3  surrendered the San Pedro Property back to the landlord and in July 2010, decided to cease its

4  operations completely.

5      6.      The Vernon Property has been listed for sale through an experienced broker since

6  February 2, 2010.  Since that time there have been three (3) offers to purchase the Vernon

7  Property; however, two (2) of the purchase offers have been rescinded.  Prior to the Petition

8  Date, the Debtor negotiated a transaction to sell the Vernon Property and escrow was opened.

9  However, the sale was frustrated by involuntary judgment liens that were recorded against the

10  Vernon Property during the ninety (90) day preference period.  As a result, the Debtor sought

11  protection under the Bankruptcy Code and on September 16, 2010, filed a petition under Chapter

12  11 of the Bankruptcy Code.  The Debtor has continued in the possession of its property and the

13  management of its affairs.

14      7.      The Vernon Property was valued in the Debtor's Bankruptcy Schedule A at

15  $2,150,000.  The Vernon Property is encumbered by a first deed of trust in favor of Nara Bank in

16  the approximate amount of $1,217,557, a second deed of trust in favor of The Mortgage Capital

17  Development Corp. ("TMC") in the approximate amount of $952,224 and disputed liens totaling

18  $742,440.  At the time of the Petition Date, the Debtor was three (3) months in arrears to Nara

19  Bank and TMC.

20      8.      The Debtor currently leases a portion of the Vernon Property to Jin's Cutting

21  pursuant to a commercial lease agreement that will expire on October 1, 2010.  The Debtor was

22  instructed to apply the security deposit to the lease payment due for the month of August 2010.

23  The Debtor is informed that Jin's Cutting will vacate the Vernon Property upon consummation

24  of the sale.

25      9.      The following chart reflects the Liens and Encumbrances[5] against the Vernon

26  Property as set forth in the Debtor's Bankruptcy Schedule D and their proposed treatment under

27  the proposed sale:

28

---

[5]      "Liens and Encumbrances" means any and all liens, claims and encumbrances of any nature whatsoever.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

25

| Creditor | Description | Scheduled Amount | Treatment Through the Sale |
|---|---|---|---|
| Los Angeles County Treasurer and Collector | Real property taxes for fiscal year 2010 – 2011 – amount owing through September 30, 2010. | $17,146.28 | All outstanding real property taxes will be paid through escrow on the sale transaction. |
| Nara Bank | First deed of trust recorded June 1, 2007, Instrument No. 2007-1326158<br><br>Deed of Trust recorded June 1, 2007, Instrument No. 2007-1326159 | $1,217,556.52 | The Debtor is informed that Nara Bank will accept $1,181,892.70 (as of July 26, 2010) as payment in full on account of the obligation owed by the Debtor.<br><br>The Debtor is informed that Nara Bank has agreed to waive a pre-payment penalty, any and all late charges and interest charges and its entitlement to assert a default interest rate. In the event that this is inaccurate, the Debtor reserves the right to object to certain fees and costs and withhold payment for that portion pending further Court order.<br><br>This claim will be paid through escrow on the sale transaction. Thus, the Vernon Property shall be sold free and clear of the lien. |
| The Mortgage Capital Development Corp. | Second deed of trust recorded June 1, 2007, Instrument No. 2007-1326163<br><br>Assignment to Small Business Administration recorded June 1, 2007, Instrument No. 2007-1326164 | $952,223.86 | The Debtor is informed that TMC will accept $952,223.86 (as of July 26, 2010) plus accrual of interest through close of escrow as payment in full on account of the obligation owed by the Debtor.<br><br>This claim will be paid through escrow on the sale transaction. In addition to the sale proceeds, the Debtor's principal and third party guarantor, Steven Yi, shall deposit approximately $128,630 in escrow to cover any deficiency owed to TMC. Thus, the Vernon Property shall be sold free and clear of the lien. |
| Voom Trim, Inc. | Writ of attachment recorded July 26, 2010, Instrument No. 2010-1019324<br><br>**(Recorded within 90 days prior to the Petition Date)** | $50,000.00 | The priority, validity and amount of this lien is disputed by the Debtor. The lien is the result of a writ of attachment which was recorded during the 90 days prior to the Petition Date.<br><br>As it is subject to a bona fide dispute, the Debtor seeks to sell the Vernon Property free and clear of the lien in favor of Voom Trim, Inc., with such disputed lien to attach to the proceeds of the sale, if any, in the same validity and priority as prior to the sale pending agreement with the creditor or further Court order. |

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc

4239-000\EXP. 56

| Creditor | Description | Scheduled Amount | Treatment Through the Sale |
|---|---|---|---|
| ATEX Corporation | Abstract of Judgment recorded August 9, 2010, Instrument No. 2010-1100197<br><br>**(Recorded within 90 days prior to the Petition Date)** | $692,440 | The priority, validity and amount of this lien is disputed by the Debtor.  The lien is the result of an abstract of judgment that was recorded during the 90 days prior to the Petition Date.<br><br>As it is subject to a bona fide dispute, the Debtor seeks to sell the Vernon Property free and clear of the lien in favor of ATEX Corporation, with such disputed lien to attach to the proceeds of the sale, if any, in the same validity and priority as prior to the sale pending agreement with the creditor or further Court order. |

10.    In summary, the Debtor seeks to sell the Vernon Property subject to approval of Nara Bank and TMC whereby the Vernon Property will be sold free and clear of all liens and encumbrances, with the disputed liens to attach to the proceeds of the sale, if any, in the same validity and priority as prior to the sale pending agreement with the creditor or further Court order.  The Debtor believes that Nara Bank and TMC will agree to accept less than the total amount due on the loans against the Vernon Property, while reserving their rights to recover any deficiency from third party guarantors of the debt.

11.    As set forth in the chart above, the liens recorded by Voom Trim, Inc. and ATEX Corporation are disputed (collectively referred to herein as "Disputed Liens").   The Disputed Liens were recorded within ninety (90) days of the Petition Date and, therefore, under applicable federal bankruptcy law, are subject to avoidance.  If necessary, the Debtor intends to file an avoidance action against the holder of a Disputed Lien to subordinate their claims to that of general unsecured creditors.

12.    In or around February 2010, the Debtor engaged Robert An of The Heger Company ("Broker") to market and sell the Vernon Property.  Contingent upon Court approval, the Debtor proposes to continue with the employment of the Broker on the terms and conditions set forth in the Listing Agreement which is attached to the Declaration of Robert An filed concurrently herewith.

///

///

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

27

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

13.    Subject to the Court approval, the Debtor has accepted the offer from Green Globe International, LLC to purchase the Vernon Property. A true and correct copy of the Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate ("Purchase Agreement") is attached hereto as Exhibit "2" and incorporated herein by this reference.

14.    I believe that the proposed sale to the Buyer is the best available alternative for maximizing the value of the Vernon Property for the Estate and creditors. The Vernon Property has been on the market since February 2010 and the Purchase Agreement is the highest and best offer that the Debtor has been able to obtain. The alternative to the proposed orderly sale would be the potential loss of the Vernon Property through foreclosure sale by Nara Bank and/or TMC, which would benefit no parties. I believe good causes exists to grant the Sale Motion so that the Debtor does not lose this favorable business opportunity.

15.    As a condition to the closing of the sale, I have agreed to advance approximately $128,000 of my personal funds to allow the sale transaction to close. I have agreed to not look to the Debtor for the repayment of any funds advanced.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed September 22, 2010 at _____Los Angeles_____, California.




Steve Yi

28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn.doc
4239-000\HXP. 56

# DECLARATION OF ROBERT AN

I, Robert An, declare:

1.      I am a real estate agent, duly licensed in the State of California and the Senior Vice President of The Heger Company located at 5701 S. Eastern Avenue, Suite 100, Commerce, California 90040; telephone (323) 727-1144.  I have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify thereto.

2.      I make this Declaration in support of the Debtor's Motion for Order:   (1) Approving the Sale of Real Property of the Estate Free and Clear of Certain Liens Pursuant to Bankruptcy Code Section 363(b)(1) and (f); (2) Authorizing the Employment of Broker, Robert An of The Heger Company; (3) Approving Payment of Real Estate Commission and Other Costs of Sale; and (4) Granting Other Related Relief ("Sale Motion").   Unless otherwise noted, capitalized terms herein have the meaning as set forth in the Sale Motion.

3.      Pre-petition, I was retained by Skylimit Apparel, Inc. to market and sell the real property located at 2533-2535 East 28th Street, Vernon, California 90058 ("Vernon Property"). A true and correct copy of the Listing Agreement is attached hereto as **Exhibit "1"** and incorporated herein by this reference.  Post-petition, the Debtor has requested that I continue to represent the Debtor in the sale of the Vernon Property.

4.      The Vernon Property has been listed since February 2, 2010.  Since that time, there have been three (3) offers to purchase the Vernon Property; however, two of which have been rescinded.

5.      I have reviewed the recent sales for commercial properties in the same area where the Vernon Property is located, which reflect purchase prices ranging from $750,000 to $4,970,000.  However, the commercial building with the most similarity in square footage to the Vernon Property was sold in November 2009 for a purchase price of $1,322,000.

6.      Given the present state of the real estate market in Southern California, I believe that the proposed sale of the Vernon Property for a purchase price of $2,150,000 is fair and reasonable.

///

**SHULMAN HODGES &
BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn-FILE COPY.doc
4239-000\EXP. 56

7.    I have not received and will not receive, a pre-petition or post-petition retainer. Pursuant to the terms set forth in the Listing Agreement, the Debtor proposes to pay me a commission of $33,000 for the sale of the Vernon Property.

8.    I have been informed and understand that no sale of the Vernon Property may be consummated until after notice and hearing.  I am also aware of the provisions of Bankruptcy Code Section 328(a) and understands that, notwithstanding the terms and condition of employment herein set forth, the Court may allow compensation different from the compensation provided in the Listing Agreement if such terms and conditions prove to have been improvident in light of developments unanticipated at the time of fixing of such terms and conditions.

9.    To the best of my knowledge, I am a disinterested person within the meaning of Bankruptcy Code Section 101(14) in that I:

a.    am not a creditor, an equity security holder, or an insider of the Debtor;

b.    am not and was not, within two (2) years before the date of the filing of the petition, a director, officer or employee of the Debtor; and

c.    do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, interest in, the Debtor or for any other reason.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 22, 2010, at _Los Angeles_, California.

_Robert An_

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

29

G:\Wp\Cases\S-T\Skylimit Apparel, Inc\Pld\Sale Mtn.doc
4239-000\EXP. 56

# EXHIBIT 1

# Listing Agreement



# EXCLUSIVE RIGHT TO REPRESENT OWNER
# FOR SALE OR LEASE OF REAL PROPERTY
### *(Non-Residential)*
### AIR COMMERCIAL REAL ESTATE ASSOCIATION

**1. BASIC PROVISIONS ("BASIC PROVISIONS").**

    **1.1 Parties:** This agency Agreement ("Agreement"), dated for reference purposes only <u>February 2, 2010</u> , is
made by and between <u>SKY LIMIT APPAREL, INC., A CALIFORNIA CORPORATION</u> ,
whose address is <u>2533-2535 East 28th Street, Vernon, California</u>
telephone number <u>(213) 718-6400</u> , Fax No. (___) _____
**("Owner")**, and <u>THE HEGER COMPANY</u>
whose address is <u>5657 East Washington Boulevard, Los Angeles, California   90040</u>
telephone number <u>(323) 727-1144</u> , Fax No. <u>(323) 727-9198</u> ,
**("Agent").**

    **1.2 Property/Premises:** The real property, or a portion thereof, which is the subject of this Agreement is commonly known by the street address of
<u>2533-2535 East 28th Street</u>
located in the City of <u>Vernon</u> , County of <u>Los Angeles</u> , State of <u>California</u> , and
generally described as (describe briefly the nature of the property): <u>An approximately 18,150 square foot building</u>
<u>situated on approximately 38,850 square feet of land</u>
**("Property").** (See also Paragraph 3).

    **1.3 Term of Agreement:** The term of this Agreement shall commence on <u>February 2, 2010</u>
and expire at 5:00 p.m. on <u>September 30, 2010</u> , except as it may be extended **("Term").** (See also paragraph 4)

    **1.4 Transaction:** The nature of the transaction concerning the Property for which Agent is employed **("Transaction")** is
(check the appropriate box(es)):

      (a) ☑ A sale for the following sale price and terms: <u>TWO MILLION FOUR HUNDRED FIFTY THOUSAND DOLLARS</u>
<u>($2,450,000.00)</u>

and other additional standard terms reasonably similar to those contained in the "STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTIONS
FOR THE PURCHASE OF REAL ESTATE" published by the AIR Commercial Real Estate Association **("AIR")**, or for such other price and terms agreeable
to Owner;

      (b) ☐ A lease or other tenancy for the following rent and terms: _____

and other additional standard terms reasonably similar to those contained in the appropriate AIR lease form or for such other rent and terms agreeable to
Owner.

**2. EXCLUSIVE EMPLOYMENT AND RIGHTS.**

    **2.1** Owner hereby employs Agent as Owner's sole and exclusive agent to represent Owner in the Transaction and to find buyers or lessees/tenants
**("lessees")**, as the case may be, for the Property. Agent shall use reasonably diligent efforts to find such buyers or lessees. All negotiations and discussions
for a Transaction shall be conducted by Agent on behalf of Owner. Owner shall promptly disclose and refer to Agent all written or oral inquiries or contacts
received by Owner from any source regarding a possible Transaction.

    **2.2** Owner authorizes Agent to:
      (a)  Place advertising signs on the Property;
      (b)  Place a lock box on the Property if vacant;
      (c)  Accept deposits from potential buyers or lessees; and
      (d)  Distribute information regarding the Property to participants in THE MULTIPLE **("MULTIPLE")** of the AIR and/or any other appropriate local
commercial multiple listing service, to other brokers, and to potential buyers or lessees of the Property. Owner shall identify as "confidential" any information
provided to Agent that Owner considers confidential and does not want disclosed. All other information provided by Owner may be disclosed as Agent may
deem appropriate or necessary. After consummation of a Transaction, Agent may publicize the terms of such Transaction.

    **2.3** Agent shall comply with the Rules of Professional Conduct of the AIR, if a member of it not, the Rules of Professional Conduct of the Society of
Industrial and Office Realtors, and shall submit the Property to the MULTIPLE. Agent shall cooperate with participants in the MULTIPLE and may, at Agent's
election, cooperate with other real estate brokers (collectively **"Cooperating Broker"**). A Cooperating Broker may, as a third-party beneficiary hereof, enforce
the terms of this Agreement against Owner or Agent.

    **2.4** If the Transaction is a sale and Agent finds a prospective buyer for the Property, or if the Transaction is a lease and Agent finds a prospective
lessee for the Property, Owner hereby authorizes Agent also to represent and act as the agent for such buyer or lessee, and Owner consents to such dual
agency. If a Cooperating Broker finds such a buyer or lessee, then Agent shall act as agent for Owner only, the Cooperating Broker shall act as agent for the
buyer or lessee only, and the Cooperating Broker shall not be Owner's agent, even though the Cooperating Broker may share in the commission paid by Owner
to Agent. A Cooperating Broker shall not be an agent or subagent of Owner or Agent.

    **2.5** Owner agrees that Agent may, during the ordinary and normal course of marketing the Property, respond to inquiries on the Property by other
prospective buyers or lessees, as well as on other competing properties, to prospective buyers and lessees and that such activities may result in
the payment of a commission to Agent by a third party.

**3. PROPERTY.**

    **3.1** The term "Property" shall include all of the following which are currently located on the Property and owned by Owner: permanent improvements,
electrical distribution systems (power panels, buss ducting, conduits, disconnects, lighting fixtures, etc.), telephone distribution systems (lines, jacks and
connections), space heaters, air conditioning equipment, air lines, carpets, window coverings, wall coverings, partitions, doors, suspended ceilings, built-ins
such    as    cabinets,    and   ——————————————————————————
——————————————————————————————————————————————————————
(If there are no additional items write "NONE"). If the Transaction is a sale, the term "Property" shall additionally include, to the extent owned by Owner, oil and
mineral rights, leases and other agreements which will continue in effect after Owner's transfer of title to the Property.

**PAGE 1 OF 3**

INITIALS                                INITIALS

©1997 - AIR COMMERCIAL REAL ESTATE ASSOCIATION           FORM OA-3-6/07E

# EXHIBIT "1"    Page 32

3.2  Within five business days after the commencement of the Term hereof, Owner shall provide Agent with the following:

(a)  A duly completed and fully executed Property Information Sheet on the most current form published by the AIR;

(b)  Copies of all leases, subleases, rental agreements, option rights, rights of first refusal, rights of first offer, or other documents containing any other limitations on Owner's right, ability and capacity to consummate a Transaction, and

(c)  If available to Owner, copies of building plans, and if the Transaction is a sale, title reports, boundary surveys, and existing notes and trust deeds which will continue to affect the Property after consummation of a sale.

3.3  Agent shall have no responsibility for maintenance, repair, replacement, operation, or security of the Property, all of which shall be Owner's sole responsibility.  Unless caused by Agent's gross negligence, Agent shall not be liable for any loss, damage, or injury to the person or property of Owner, any lessees of the Property, any buyer, prospective buyer, lessee, or prospective lessee, including, but not limited to, those which may occur as a result of Agent's use of a lock box.

**4.  EXTENSION OF TERM.**  If the Transaction is a sale, and a sale is not consummated for any reason after Owner accepts an offer to purchase the Property ("**Sale Agreement**"), then the expiration date of the Term of this Agreement shall be extended by the number of days that elapsed between the date Owner entered into the Sale Agreement and the later of the date on which the Sale Agreement is terminated or the date Owner is able to convey title to a new buyer free and clear of any claims by the prior buyer of the Property; provided, however, in no event shall the Term be so extended beyond one year from the date the Term would have otherwise expired.

**5.  COMMISSION.**

5.1  Owner shall pay Agent a commission ☐ in the amount of – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

☑ in accordance with the commission schedule attached hereto ("**Agreed Commission**"), for a Transaction, whether such Transaction is consummated as a result of the efforts of Agent, Owner, or some other person or entity. Agent shall also be entitled to the Agreed Commission if any of the Owner's representations and warranties described in paragraph 8 are shown to be false. Such Agreed Commission is payable:

(a)  If the Transaction is a sale, (i) a buyer is procured who is ready, willing and able to buy the Property at the price and on the terms stated herein, or on any other price and terms agreeable to Owner; (ii) Owner breaches or repudiates any Sale Agreement, escrow instructions or other documents executed by Owner regarding the sale of the Property; (iii) the Property or any interest therein is voluntarily or involuntarily sold, conveyed, contributed or transferred; (iv) the Property or any interest therein is taken under the power of Eminent Domain or sold under threat of condemnation, or (v) if Owner is a partnership, joint venture, limited liability company, corporation, trust or other entity, and any interest in Owner is voluntarily or involuntarily sold, contributed, conveyed or transferred to another person or entity that, as of the date hereof, does not have any ownership interest in Owner;

(b)  If the Transaction is a lease, (i) a lease of the Property, or a portion thereof is executed; or (ii) a lessee is procured who is ready, willing and able to lease the Property on the terms stated herein, or on any other rent and/or terms agreeable to Owner; or

(c)  If Owner (i) removes or withdraws the Property from a Transaction or the market; (ii) acts as if the Property is not available for a Transaction; (iii) treats the Property as not available for a Transaction; (iv) breaches, terminates, cancels or repudiates this Agreement; (v) renders the Property unmarketable; or (vi) changes the status of the Property's title, leases, agreements, physical condition or other aspects thereof, which such change adversely impacts the value, use, desirability or marketability of the Property.

5.2  If the Transaction is a sale, the purchase agreement and/or escrow instructions to be entered into by and between Owner and a buyer of the Property shall provide that:

(a)  Owner irrevocably instructs the escrow holder to pay from Owner's proceeds accruing to the account of Owner at the close of escrow the Agreed Commission to Agent;

(b)  A contingency to the consummation of the sale shall be the payment of the Agreed Commission to Agent at or prior to close of the escrow; and

(c)  No change shall be made by Owner or buyer with respect to the time of, amount of, or the conditions to payment of the Agreed Commission, without Agent's written consent.

**6.  ALTERNATIVE TRANSACTION.**  If the Transaction changes to any other transaction, including, but not limited to, a sale, exchange, option to buy, right of first refusal, ground lease, lease, sublease or assignment of lease (collectively "**Alternative Transaction**"), then Agent shall automatically be Owner's sole and exclusive Agent for such Alternative Transaction and represent Owner in such Alternative Transaction, under the terms and conditions of this Agreement. If, during the Term hereof, an Alternative Transaction is entered into, then Owner shall pay Agent the Agreed Commission.

**7.  EXCLUDED AND REGISTERED PERSONS.**

7.1  Owner shall, within 5 business days after the date hereof, provide Agent, in writing, with the names of those persons or entities registered with Owner by any other broker under any prior agreement concerning the Property ("**Excluded Persons, see paragraph 7.5**). Owner shall also specify for each Excluded Person the type of transaction the consummation of which during the Term of this Agreement entitles such other broker to any compensation ("**Excluded Transaction**").  Agent may within 10 days of receiving such written list, either (a) accept the Excluded Persons and Excluded Transactions, (b) cancel this Agreement, or (c) attempt to renegotiate this portion of this Agreement with Owner. Once accepted by Agent, the written list shall automatically become an exhibit to this Agreement. If Owner timely provides Agent with the names of the Excluded Persons and specifies the Excluded Transaction for each Excluded Person, then the Agreed Commission paid to Agent with respect to consummation of such an Excluded Transaction with an Excluded Person shall be limited as follows:  if such Excluded Transaction is concluded within the first 30 days of the commencement of the Term hereof, then Agent shall be paid a commission equal to the reasonable out-of-pocket expenses incurred by Agent in the marketing of the Property during said 30 days; or if such Excluded Transaction is concluded during the remainder of the Term hereof, then Agent shall be entitled to a commission equal to one-half of the Agreed Commission. If the specified information concerning Excluded Persons and Transactions is not provided as set forth herein, then it shall be conclusively deemed that there are no Excluded Persons.

7.2  Agent shall, within 5 business days after the expiration of the Term hereof, provide Owner, in writing, with the name of those persons or entities with whom Agent either directly or through another broker has negotiated during the Term hereof ("**Registered Persons, see paragraph 7.5**), and specify the type of transaction of the Property for which such negotiations were conducted ("**Registered Transaction**"). Those persons or entities who submitted written offers or letters of intent shall, however, automatically be deemed to be Registered Persons for the type of transaction which was the subject of such offer or letter of intent.  If Agent fails to timely notify Owner of the existence of any other Registered Persons, then it shall be conclusively deemed that there are no other Registered Persons.  A person or entity shall not be a Registered Person if Agent fails to timely specify a Registered Transaction for such person or entity.  If Agent wishes to register the client of a Cooperating Broker, Agent must obtain and submit to Owner written approval of such registration signed by such Cooperating Broker.  The parties are aware that the registration of certain individuals and/or entities might create a Dual Agency, and Owner hereby consents to any such Dual Agency.

7.3  If, within 180 days after the expiration of the Term hereof, Owner enters into a contract with a Registered Person for consummation of a Registered Transaction, then Owner shall, upon consummation of such Registered Transaction, pay Agent the Agreed Commission for the Registered Transaction.

7.4  If, within 180 days after the expiration of the Term hereof, Owner enters into another owner-agency or listing agreement with a broker other than Agent for any transaction concerning the Property, then Owner shall provide to Owner's new broker the names of the Registered Persons and the Registered Transaction for each Registered Person, and provide in such new agreement that the new broker shall not be entitled to receive any of the compensation payable to Agent hereunder for consummation of a Registered Transaction with a Registered Person.

7.5  In order to qualify to be an Excluded Person or a Registered Person the individual or entity must have: toured the Property, submitted a letter of interest or intent, and/or made an offer to buy or lease the Property. In addition, Excluded Persons may only be registered by a broker who previously had a valid listing agreement covering the Property, and such broker may only register individuals and entities actually procured by such listing broker.

**8.  OWNER'S REPRESENTATIONS.**

Owner represents and warrants that:

(a)  Each person executing this Agreement on behalf of Owner has the full right, power and authority to execute this Agreement as or on behalf of Owner;

(b)  Owner owns the Property and/or has the full right, power and authority to execute this Agreement and to consummate a Transaction as provided herein, and to perform Owner's obligations hereunder;

(c)  Neither Owner nor the Property is the subject of a bankruptcy, insolvency, probate or conservatorship proceeding;

(d)  Owner has no notice or knowledge that any lessee or sublessee of the Property, if any, is the subject of a bankruptcy or insolvency proceeding;

(e)  There are no effective, valid or enforceable option rights, rights of first refusal, rights of first offer or any other restrictions, impediments or limitations on Owner's right, ability and capacity to consummate a Transaction, except as disclosed in writing pursuant to Paragraph 3.2(b).

**9.  OWNER'S ACKNOWLEDGMENTS.**  Owner acknowledges that it has been advised by Agent to consult and retain experts to advise and represent it concerning the legal and tax effects of this Agreement and consummation of a Transaction or Alternative Transaction, as well as the condition and/or legality of the Property, including, but not limited to, the Property's improvements, equipment, soil, tenancies, title and environmental aspects. Agent shall have no

**PAGE 2 OF 3**

INITIALS                                                                                                                INITIALS

©1997 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OA-3-6/07E

**EXHIBIT "1"        Page 33**

obligation to investigate any such matters unless expressly otherwise agreed to in writing by Owner and Agent. Owner further acknowledges that in determining the financial soundness of any prospective buyer, lessee or security offered, Owner will rely solely upon Owner's own investigation, notwithstanding Agent's assistance in gathering such information.

**10.  MISCELLANEOUS.**
10.1 This Agreement shall not be construed either for or against Owner or Agent, but shall be interpreted, construed and enforced in accordance with the mutual intent of the parties ascertainable from the language of this Agreement.
10.2 All payments by Owner to Agent shall be made in lawful United States currency. If Owner fails to pay to Agent any amount when due under this Agreement, then such amount shall bear interest at the rate of 15% per annum or the maximum rate allowed by law, whichever is less.
10.3 In the event of litigation or arbitration between or among Owner, Agent, a Cooperating Broker, a buyer, prospective buyer, lessee, or prospective lessee of the Property, or any of them, arising under or relating to this Agreement or the Property, the prevailing party shall be paid its attorney's fees and costs by the losing party.  The term, "Prevailing Party" shall include, without limitation, one who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other party of its claim or defense.  The attorney's fees award shall not be computed in accordance with any court fee schedule, but shall be in an amount to fully reimburse all attorney's fees reasonably incurred in good faith.
10.4 Owner agrees to indemnify, defend (with counsel reasonably acceptable to Agent), and hold Agent harmless from and against any claim or liability asserted against Agent as a result of the failure of Owner to make a full and complete disclosure pursuant to law and paragraph 3.2(a) or as a result of the fact that any of the representations made by Owner (see paragraph 8) were not true at the time that this Agreement was signed.
10.5 Owner hereby releases and relieves Agent, and waives Owner's entire right of recovery against Agent, for direct or consequential loss or damage arising out of or incident to the perils covered by insurance carried by Owner, whether or not due to the negligence of Agent.
10.6 In the event that the Transaction is not an outright sale, Owner agrees that if Agent is not paid the Agreed Commission provided for herein within thirty days of the date due, that Agent shall have a lien in the amount of such commission, and may record a notice of such lien, against the Property.
10.7 Owner agrees that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to the services to be performed by Agent pursuant to this Agreement may be brought against Agent more than one year after the expiration of the Term of this Agreement (see paragraph 1.3) and that the liability (including court costs and attorney's fees) of Agent with respect to any such lawsuit and/or legal proceeding shall not exceed any fee received by Agent pursuant to this Agreement; provided, however, that the foregoing limitation on liability shall not be applicable to any gross negligence or willful misconduct of Agent.

**11.  ARBITRATION OF DISPUTES.**
11.1 ANY CONTROVERSY ARISING UNDER OR RELATING TO THIS AGREEMENT SHALL BE DETERMINED BY BINDING ARBITRATION TO BE CONDUCTED BY: ☐ THE AMERICAN ARBITRATION ASSOCIATION OR ☐ _____
USING THE COMMERCIAL RULES ESTABLISHED BY SUCH ORGANIZATION OR IF NONE THE AMERICAN ARBITRATION ASSOCIATION'S COMMERCIAL RULES.  ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED.
11.2 NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL.  BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION.  IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE.  YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.
11.3 WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

_____                              _____
Owner's Initials                                                        Agent's Initials

11.4 THE PROVISIONS OF THE ABOVE ARBITRATION CLAUSE SHALL NOT BE BINDING ON EITHER PARTY UNLESS BOTH PARTIES HAVE PLACED THEIR INITIALS UNDER PARAGRAPH 11.3.

**12.  Additional Provisions:** Additional provisions of this Agreement are set forth in the following blank lines or in an addendum attached hereto and made a part hereof consisting of paragraphs _ _ _ _ through _ _ _ _ (if there are no additional provisions write "NONE"):  NONE.

**13.  Disclosures Regarding The Nature of a Real Estate Agency Relationship.**  When entering into an agreement with a real estate agent an Owner should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction.
(i)      *Owner's Agent.*  An Owner's agent may act as an agent for the Owner only.  An Owner's agent or subagent has the following affirmative obligations:  *To the Owner:*  A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings.  *To a potential buyer/lessee and the Owner:*  a. Diligent exercise of reasonable skills and care in performance of the agent's duties.  b. A duty of honest and fair dealing and good faith.  c. A duty todisclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties.  An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.
(ii)     *Agent Representing Both Parties.*  A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both Parties in a transaction, but only with the knowledge and consent of the Parties.  In a dual agency situation, the agent has the following affirmative obligations to both Parties:  a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Party.  b. Other duties to the Owner as stated above in subparagraph (i).  When representing both Parties, an agent may not without the express permission of the respective Party, disclose to the other Party that the Owner will accept rent/purchase price in an amount less than that indicated in the listing or that the buyer/lessee is willing to pay a higher rent/purchase price than that offered.

The above duties of the Agent do not relieve Owner from the responsibility to protect its own interests. Owner should carefully read all agreements to assure that they adequately express its understanding of the transaction.

**"OWNER"**                                                               **"AGENT"**

SKY LIMIT APPAREL, INC.,                        THE HEGER COMPANY
A CALIFORNIA CORPORATION                  _____
By: _____                   By: _____
Name Printed: _____          Name Printed: Robert S. An
Title: _____              Title: Senior Vice President
Date: _____             Date: _____
                                                                         Agent DRE License #: 01184792

**NOTICE:**  These forms are often modified to meet changing requirements of law and industry needs.  Always write or call to make sure you are utilizing the most current form:  AIR Commercial Real Estate Association, 800 W 6th Street, Suite 800, Los Angeles, CA 90017.

_____                                  PAGE 3 OF 3                                  _____
INITIALS                                                                                            INITIALS

©1997 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                                    FORM OA-3-6/07E

**EXHIBIT "1"**                        **Page 34**



**The Heger Company**
Commercial & Industrial Properties Since 1957
Corporate Headquarters - Lic. # 00814086
5657 East Washington Boulevard, Los Angeles, California 90040
(323) 727-1144   Fax: (323) 727-9198

## SCHEDULE OF REAL ESTATE COMMISSIONS

For the Property commonly known as _____2533-2535 East 28th Street, Vernon, California_____

The following Real Estate commission rates shall remain in effect for services rendered by The Heger Company (a.k.a. Heger Realty Corporation) during the term of the Agreement to which it is attached, unless modified by written agreement of the parties.

I.    **SALES COMMISSIONS**

    Improved/Unimproved Property   4%     6% of the Gross Purchase Price     2.5% if Robert An is
the procuring Agent.   ‾‾‾‾‾ Initials

II.   **LEASE COMMISSIONS - LESS THAN ONE YEAR/MONTH-TO-MONTH**

    Commission equal to 50% of the 1st month's rent for up to six (6) months occupancy. Thereafter, for each successive six (6) month period, an additional commission of 50% of the average monthly rent for the applicable six (6) month period will be due and payable in full within ten (10) business days upon execution of a lease by the owner and tenant. At no time or event shall the commission due for any six (6) month period be less than $1,500.00.

III.  **LEASE COMMISSIONS – GROSS LEASE**

    Years 1 through 5:       6% of the Total Lease Consideration

    Years 6 and longer:     5% of the Total Lease Consideration

IV.   **LEASE COMMISSIONS - NET LEASE**

    Years 1 through 5:       7% of the Total Lease Consideration

    Years 6 and longer:     6% of the Total Lease Consideration

V.    **EXTENSION OF TERM OR TENANT OCCUPIES ADDITIONAL SPACE**

    Should the term of the lease be extended or if the tenant shall occupy additional space, whether by virtue of an option or other rights conferred in the lease, or subsequent modifications of said option or rights, or any other later agreement between Owner and Tenant which results in Tenant continuing to occupy the Premises beyond the original term or expand the Premises from those contemplated at the commencement of the initial term, then under any of said situations an additional leasing commission shall be earned by The Heger Company in accordance with this schedule of commission outlined above and shall be payable at the time the extended term commences or the additional space is occupied. If the term of the lease is extended, the additional lease period shall be added to the initial lease term for the purposes of computing the amount of the additional lease commission due. If the leased premises are expanded, a lease commission shall be calculated for the additional space as if it were a new and separate lease, with the commission determined based upon the rent payable for the expanded space and any increased rental applicable to the original Premises.

VI.   **PURCHASE OF PROPERTY BY TENANT**

    Should the Tenant, its successors, or assigns, principal, or any agent, officer, shareholder, partner, owner, family member, or affiliate thereof purchase all or part of the premises during the term of the Lease or within 24 months after termination of occupancy of the Premises by the Tenant, whether pursuant to purchase option in the original lease or otherwise, then the applicable sales commission as set forth in this Schedule shall be paid to The Heger Company at the time of purchase.

VII.  **TERMS OF PAYMENT**

    A. All Sales commissions shall be due and payable in cash immediately upon the close of escrow, or if there is no escrow, then upon execution recordation of deed.

    B. All new Leasing commissions shall be due and payable in cash immediately, in full, upon execution of a lease by owner and tenant in accordance with the relevant rates referenced within this agreement. All commissions for the extension of term or when tenant occupies additional space shall be due and payable in cash immediately at the time the extended term commences or the additional space is occupied.

    C. The provisions of this Commission Schedule are subject to the terms of the Exclusive Right to Represent Owner for Sale or Lease of Real Property, Standard Sublease Agency Agreement for Sublease, or other agreement to which this Schedule is attached and which is executed by the parties hereto.

    D. In the event Owner fails to make full payment within ten (10) business days of the time limits set forth herein, in that event, from the date said commission is due until paid, the delinquent amount shall bear interest at the greater of ten percent (10%) per annum or the maximum rate permitted in the State of California. If The Heger Company is required to initiate legal action against the Owner relating to this schedule or any agreement to which it is a party, then the prevailing party shall be entitled to reasonable attorney's fees and costs.

**EXHIBIT "1"**       **Page 35**

The Heger Company
Commercial & Industrial Properties Since 1957
Corporate Headquarters - Lic. # 00814086
5657 East Washington Boulevard, Los Angeles, California  90040
(323) 727-1144    Fax:  (323) 727-9198



**THE HEGER COMPANY**
*Commercial & Industrial Real Estate Since 1957*

## COMMISSION SCHEDULE
### Page 2 of 2

For the Property commonly known as ____ 2533-2535 East 28th Street, Vernon, California _____

VIII.    CALCULATION FOR PAYMENT OF COMMISSION

Commissions, with the exception being month-to-month agreements referenced above in paragraph II are calculated as follows:

A. Sale:    Agreed Commission % x Sales Price = Commission Due
(i.e. 6% x $1,000,000 = $60,000 Commission Due)

B. Lease:    Agreed Commission % x Total Lease Consideration/Rent* = Commission Due

*Total Lease Consideration is calculated as follows:

Monthly Base Rent  x  Total Number of Months in Lease = Total Lease Consideration/Rent

The undersigned hereby acknowledges receipt of a copy of this Schedule of Commissions, accepts and agrees to said Schedule, and agrees to pay a commission in full as provided herein in accordance with the agreement or other instrument to which this Schedule is attached, and further agrees that this Schedule of Commissions is binding upon and shall inure to the benefit of the respective heirs, successors and assigns of each of the parties to this agreement.

The undersigned person or persons hereby certify that they are duly authorized to execute this commission schedule and the listing agreement to which it is attached as either the owner, landlord or on behalf of owner or landlord.

THE HEGER COMPANY:

DATE APPROVED:_____    BY:_____
Robert S. An
Title:__Senior Vice President_____

OWNER/LANDLORD:    SKY LIMIT APPAREL, INC.,
A CALIFORNIA CORPORATION

DATE APPROVED:_____    BY:_____

Title:_____

BY:_____

Title:_____

Commission Schedule Rev. 6-13-08